UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JULIE A. SMITH, | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) No. 4:07-CV-00069 JD |
| | ) |
| LAFAYETTE BANK & TRUST, | ) |
| | ) |
| Defendant/Counter-Claimant. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on defendant/counter-claimant Lafayette Bank and Trust's Motion for Summary Judgment on plaintiff/counter-defendant Julie A. Smith's Complaint [DE 33], Motion for Partial Summary Judgment on its Counterclaim [DE 51], and Motion to Strike [DE 84]. Smith has filed a Motion for Reconsideration and for Oral Argument [DE 82] of the Court's order denying Smith's Motion to Enlarge Time. For the reasons set forth below, the bank's Motion to for Summary Judgment on Smith's complaint is **GRANTED**, and its Motion to Strike is **DENIED AS MOOT.** The Court takes **NO ACTION** on the bank's Motion for Summary Judgment on its counterclaim. The case is **REMANDED** to state court for adjudication of the bank's state law counterclaims. Smith's Motion for Reconsideration is **DENIED AS MOOT**.

**I.     BACKGROUND**

   **A.**   *Procedural Background*

On October 31, 2007, Julie Smith brought suit against her former employer, Lafayette Bank and Trust ("the bank") in the Tippecanoe County Superior Court, alleging discrimination on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA"), and retaliation under the ADEA. 29 U.S.C. § 621, *et seq*. A week later, the bank removed the

case to federal court on the basis of federal question jurisdiction.

On November 5, 2008, the bank filed a counterclaim against Smith alleging that Smith breached the Indiana Trade Secret Act, Ind. Code § 24-2-3-1, *et seq.*, and committed civil and criminal conversion under Indiana law by refusing to turn over bank records and documents Smith allegedly took from her former employer. [DE 23]; Ind. Code § 35-43-4-3, *et seq*.

The bank also asserted a state law replevin claim to secure the return of its records and documents.

On March 6, 2009, the bank moved for summary judgment on Smith's complaint. [DE 33]. That motion has been fully briefed. In her response in opposition to summary judgment, Smith dropped her ADEA discrimination claim, leaving only her ADEA retaliation claim pending before the Court. [DE 74 at 3]. The bank, in its reply in support of summary judgment, moved to strike two documents Smith offered in opposition to summary judgment, as well as a portion of Smith's brief. [DE 84].

On June 10, 2009, the bank filed a partial Motion for Summary Judgment on its counterclaim. [DE 51]. Smith's counsel requested several extensions of time to file a response and was given nearly four months to do so. [DE 35, 46, 54, 60, 62, 64, 66, 69]. On September 30, 2009, the court warned Smith's counsel that the failure to file a response by October 5, 2009, could result in summary ruling. [DE 71]. Despite this warning, Smith's counsel failed to respond timely to the bank's Motion for Summary Judgment on its counterclaim. Smith seeks reconsideration of the Court's denial of her ninth motion for an extension of time in which to file her response. [DE 82].

**B.** *Factual Background*

2

In October 1980, Smith began working for the bank as a teller. (Smith Dep. 21:6-9, Oct. 8, 2008; DE 33-1.) Over the next 15 years, she received several promotions, and eventually became a branch manager. (*Id.* at 21:16-22:1.) Smith describes her responsibilities as branch manager as taking care of "the customers, the branch, the employees." (*Id.* at 24:4.)

As branch manager, Smith was responsible for being familiar with the bank's policies, which were set forth in an employee handbook. (Smith Dep. 24:23-24, 26:2-4); *see also* [DE 88-140] (handbook). Smith testified that she received email updates from the bank's human resources department notifying her when the employee handbook was updated, and that she kept one copy of the handbook in her office at the bank and one at home, which she read regularly. (Smith Dep. at 25:3-23, 27:1-4.)

The employee handbook that was in effect in 2006 states that the bank's policy was to provide a working environment free from "all forms of discrimination, including harassment on the basis of . . . age." [DE 33-2 at 29]. The handbook further directs that, "[a]n employee who believes they have been subject to any form of harassment should report the conduct immediately to Human Resources. No victim retaliation or discrimination will result from any good-faith complaint made under this policy." *Id.* at 30.

Smith received periodic performance reviews throughout her employment with the bank. (Smith Dep. 27:15-28:1, DE 88-140.) However, in 2002, the bank merged with First Merchant's Corporation. (Albrecht Aff. ¶ 5, DE 33-4.) According to the bank's Executive Vice President, Daniel Gick, the merger interrupted the bank's normal practice of issuing performance reviews. (Gick Aff. ¶ 5, DE 33-3.) As a result, no performance reviews were conducted in 2003 and the 2004 reviews were not conducted until 2005. (*Id.*)

In late 2004, the bank made a series of layoffs in several of its branch locations. (*Id.* at ¶ 16.) In order to determine how many individuals would be let go from each branch, the bank used a staffing model that considered the number of transactions at each branch. (*Id.*) Smith was required to release one person from her branch. (Smith Dep. 34:17-35:8, DE 88-140.)

In May 2005, Gick met with Smith in order to discuss her 2004 performance review. (Smith Dep. 101:5-11, DE 88-141.) According to Gick, he informed Smith at that meeting that the bank had received complaints about her from both customers and staff. (Gick Aff. ¶ 7, DE 33-3.) Smith recalls that Gick talked down to her during the meeting and refused to answer her questions. (Smith Dep. 43:25-44:15, DE 88-140.) Nonetheless, Smith was allowed to take her employee review home with her and add comments. (Gick Aff. ¶ 7, DE 33-3.)

On the written review sheet, Smith was given a ranking of "improvement needed." [DE 33-3 at 10]. The review noted that the bank "received several customer comments regarding cold tense atmosphere at branch," which the bank attributed to the "stressful and adversarial" relationship between Smith and her staff. *Id.* at 12. The bank further noted that when under pressure, Smith became "stressed" and "rude," and that she needed to work on "smiling [and] making customers feel welcome." *Id.* In her responsive comments, Smith expressed frustration that none of these issues had been brought to her attention before, and stated that she felt the feedback she was given in the review was vague. *Id.* at 14. As a result of her evaluation, the bank paid for Smith to attend two leadership seminars in the summer and fall of 2005. (Smith Dep. 103:8-104:16, DE 88-141.)

In January 2006, Smith met with Gick and Mitzi Thomas, the bank's Vice President of Human Resources, for her 2005 employee review. (*Id.* at 113:2-7.) Although her evaluation

4

noted some improvement, Smith still received an overall ranking of "improvement needed." [DE 33-3 at 16]. Smith testified that after her meeting with Gick and Thomas she understood that she needed to show improvement with regard to her stability, composure, interpersonal skills, accountability, team building, ability to develop action plans, and mentoring. (Smith Dep. 115:3-9, DE 88-141.)

In March 2006, following additional customer complaints about Smith, Gick and Thomas met with other employees of Smith's branch in order to listen to any concerns those employees may have had about Smith. (Gick Aff. ¶ 10, DE 33-3.) A month later, Gick met with Smith in order to address the concerns that came up at the March 2006 employee meeting. (*Id.* at ¶ 12.) Smith was given a written summary of the meeting, which reported that Smith was in a bad mood three out of five days a week, was not approachable, kept customers waiting, was condescending toward her subordinates, and was not a good mentor to her employees. [DE 33-3 at 21]. Smith signed the summary, which warned her that unless improvement was seen, she could face termination. *Id.*

Gick continued to receive complaints about Smith from branch employees, many of whom requested transfers away from Smith's branch. (Gick Aff. ¶ 12, DE 33-3.) As a result, Gick and Thomas met with Smith in May 2006 and, once again, provided her with a written summary of the meeting. (*Id.*) In the written summary, Smith was given the option of either resigning or providing a letter of commitment promising to improve and acknowledging that if she did not improve, her employment would be terminated. [DE 33-3 at 23-24]. Smith chose to write a letter of commitment. *Id.* at 26.

A few weeks later, Marcia Mull-Comber, one of Smith's subordinates, met with Gick and

5

Thomas to report that Smith had mistreated her several times and had accused her of cheating a customer. (Gick Aff. ¶ 13, DE 33-3.) After investigating the matter, Gick and Thomas met with the bank president and the senior vice president of human resources and decided to terminate Smith's employment. (*Id.*)

In November 2006, Smith filed an EEOC Charge against the Bank. [DE 33-1 at 21]. The next year, she filed suit against the bank alleging retaliation in violation of the ADEA. [DE 1]. Smith's retaliation claim is based, in part, upon her complaints regarding her 401(k). (Smith Dep. 79:2-12, DE 88-140.) Specifically, in 2003, following the bank's merger, Smith asked bank president and CEO Tony Albrecht how her December 2003 401(k) contribution had been calculated. [DE 88-22]. A month later, Smith received a response from Albrecht, indicating that the bank would not disclose the methodology used to calculate the payment. [DE 88-24].

Smith made another inquiry in the spring of 2006, when the bank made its contribution to Smith's 401(k) three months late. Smith asked Thomas whether she needed to get "outside help" in order to get her contribution, and she was told "no." (Smith Dep. 50:8-13, 79:15-25, DE 88-140.) According to Thomas, the 401(k) deposits for all bank employees were made late that year due to the bank's need for additional time to calculate contributions for 2005. (Thomas Aff. ¶ 18, DE 33-2.) As a result, all employees, including Smith, received their 401(k) contributions in March 2006. (*Id.*)

During the course of discovery on Smith's ADEA claim, the bank alleges that it learned that Smith retained certain confidential bank records. When Smith refused to return the records, the bank filed a counterclaim. [DE 23].

The employee handbook that was in effect when Smith left the bank's employ contained

a Code of Business Conduct. [DE 33-3 at 39]. The code states that "information concerning customers . . . is to be held in strictest confidence" and "is to be used solely for business purposes and not as a basis for personal gain." *Id.*

Smith admitted that when she was fired she retained some customer documents. (Smith Dep. 183:12-14, DE 88-141.) She further admitted that the documents in question contained confidential information about customers, and that the bank asked for the documents back after firing her. (*Id.* at 184:1-6.) Smith maintains that she took confidential documents home on her lunch hour on the day she was fired, but before she found out that she was being fired. (*Id.* at 186:10-187:1.) She states that she kept the confidential documents because she "didn't realize they [the bank] needed them." (*Id.* at 187:12-17.)

On September 3, 2008, the bank, through its counsel of record, requested that Smith return the confidential documents. [DE 51-2 at 6]. Smith's counsel requested extra time in which to do so, but to date Smith has not returned any of the confidential documents to the bank. (Mastrain Aff. ¶ 6-7, DE 51-2.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law." *Brown v. City of Lafayette*, No. 4:08-CV-69, 2010 WL 1570805, at *2 (N.D. Ind. Apr. 16, 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has met this burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988). To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Cicero v. Lewco Secs. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper–even mandated. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23) (holding that a failure to prove one essential element "necessarily renders all other facts immaterial")).

In ruling on a motion for summary judgment, a court must view all facts in the light most

favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir. 1994). Thus, in responding to the bank's Motion for Summary Judgment, the Court must credit Smith's version of the facts. In so doing, the Court does not vouch for the truth of those facts, but merely uses them to determine whether a genuine issue necessitating a trial exists. *See Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044-45 (7th Cir. 2002).

**III. DISCUSSION**

    **A.** *Smith's ADEA Retaliation Claim*

Smith claims that the bank retaliated against her for engaging in conduct protected by the ADEA. 29 U.S.C. § 623(d). A *prima facie* case of retaliation under the ADEA may be made directly or indirectly. *Kodl v. Bd. of Educ. Sch. Dist. 45*, 490 F.3d 558, 562 (7th Cir. 2007). However, under either method, Smith must show that she engaged in statutorily protected activity. *Compare Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005) (noting that the direct method requires the plaintiff to show "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection between the two") *with Tomanovich v. City of Indianapolis,* 457 F.3d 656, 663 (7th Cir. 2006) (stating that the indirect method requires the plaintiff to show that (1) she engaged in statutorily protected expression, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected expression).

In order for an employee's complaints to constitute protected activity, they must include

9

an objection to discrimination on the basis of age (or another protected criterion). *See* 29 U.S.C. § 623. Here, Smith's complaints pertain to the bank's contributions to her 401(k) and staff shortages within her branch. None of Smith's emails regarding staff shortages mention or implicate age discrimination or any other protected criterion. [DE 88-31, 88-42, 88-110, 88-113]. Nor do her complaints regarding 401(k) contributions do so. [DE 88-23]; (Smith Dep. 50:8-13, 79:15-25). As a result, Smith's complaints do not constitute protected activity under the ADEA. *See Tomanovich*, 457 F.3d at 663 ("Merely complaining in general terms of . . . harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient."); *see also Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008) (finding no protected activity where a plaintiff sent two emails stating that he felt retaliated against for complaining about his employer's management style without alluding to age or age discrimination); *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 615 (8th Cir. 2003) (finding no protected activity where a plaintiff wrote letters accusing his employer of engaging in improper loan procedures without mentioning age discrimination).

Because Smith never complained about age discrimination, the bank is entitled to judgment as a matter of law on Smith's ADEA retaliation claim. The bank's Motion for Summary Judgment on Smith's complaint [DE 33] is therefore **GRANTED**.

**B.**     *The Bank's Motion to Strike*

In its reply brief in support of summary judgment on Smith's ADEA retaliation claim [DE 84], the bank moved to strike Smith's declaration [DE 88-148] on the ground that it contains statements inconsistent with her prior testimony and references numerous documents irrelevant

to her claim. The bank also moved to strike attorney Michael Kendall's declaration [DE 88-149] because it seeks to authenticate an uncertified transcript of Smith's unemployment hearing, as well as certain "material facts" listed by Smith in her response brief. [DE 74].

Even assuming the truth of Smith's factual allegations, including those contained in her brief, her declaration, and her attorney's declaration, those allegations do not affect the Court's summary judgment ruling. The court therefore **DENIES AS MOOT** the bank's Motion to Strike [DE 84].

### C. *The Bank's State Law Counterclaims*

The bank also seeks summary judgment on the criminal conversion, civil or tortious conversion, and replevin claims contained in its counterclaim. [DE 51]. These claims arise out of Smith's alleged retention of confidential bank records.

Having dismissed the claims over which this Court had original jurisdiction, the Court has the discretion to remand the remaining state claims to Tippecanoe Circuit Court, pursuant to 28 U.S.C. § 1367(c)(3). *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 619 (1988); *Bean v. Wis. Bell, Inc.*, 366 F.3d 451, 456 (7th Cir. 2004); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727-28 (7th Cir. 1998). A district court exercises significant discretion in determining whether to retain or remand such pendent claims, based upon "the principles of considerations of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Cohill*, 484 U.S. at 357. Given these principles, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins.*

11

*Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). However, courts have recognized three exceptions to this general rule: when (1) "the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court"; (2) "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; or (3) "when it is absolutely clear how the pendent claims can be decided." *Id.*

None of these exceptions apply in this case. To the extent that the applicable statutes of limitations have run on any of the bank's counterclaims, remanding these claims to state court (rather than dismissing them outright) would obviate any need to file a new action potentially subject to statute of limitations concerns. Additionally, since the record survives remand, attorneys' efforts need not be duplicated. And given the survival of four unresolved state law counterclaims in this case, this Court finds it appropriate to permit the state court to interpret and apply its own law. The fact that the bank's replevin claim (and perhaps other claims) will require additional court proceedings supports this conclusion. *See Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993) (citing the necessity of further trial proceedings as relevant to the district court's exercise of supplemental jurisdiction over pendent claims). As a result, the factors of economy, convenience, fairness, and comity here counsel in favor of remanding the bank's counterclaims to state court.

The bank's counterclaims and any and all remaining state law claims are hence **REMANDED** to Tippecanoe Circuit Court for adjudication.[1]

---

[1] This remand includes the bank's counterclaim alleging a violation of Indiana's Trade Secret Act pursuant to Indiana Code § 24-2-3-1, on which the bank did not move for summary judgment. [DE 51 at 2 n.1].

## IV. CONCLUSION

For the foregoing reasons, Lafayette Bank and Trust's Motion to Strike [DE 84] is **DENIED AS MOOT**. Its Motion for Summary Judgment on Smith's complaint [DE 33] is **GRANTED**. The Court takes **NO ACTION** on the bank's Motion for Summary Judgment on its counterclaims [DE 51]. The Court **DIRECTS** the Clerk to enter judgment in favor of Defendant Lafayette Bank & Trust and against Plaintiff Julie A. Smith on the federal claims asserted in her Complaint. The remaining state law counterclaims are hereby **REMANDED** to Tippecanoe Circuit Court for all further proceedings. Smith's Motion for Reconsideration and for Oral Argument [DE 82] is **DENIED AS MOOT**.

SO ORDERED.

ENTERED:   September 29, 2010

    /S/ JON E. DEGUILIO
Judge
United States District Court